## IN THE CHANCERY COURT OF OBION COUNTY, TENNESSEE

| | | |
|---|---|---|
| MARK COOPER, doing business as<br>COOPER CONSTRUCTION, | ) ) ) | |
| Plaintiff | ) | No.  36,062 |
| VS. | ) ) | |
| BUILDERS MUTUAL INSURANCE<br>COMPANY; AND CHARLES MOORE<br>AND BETTYE MOORE | ) ) ) | **JURY DEMAND** |
| Defendants | ) ) ) | FILED April 30, 2025<br>TIME  3:40 pm<br>EMILY HALL, CLERK & MASTER<br>eh                          D.C.&M. |

### COMPLAINT FOR DECLARATORY JUDGMENT

This Complaint is respectfully filed by the Plaintiff, pursuant to *Rule 57* of the *Rules Of Civil Procedure* and *Tennessee Code 29-14-101 thru 113*, seeking Declaratory Judgment concerning coverage provided under the terms of a contract of insurance issued to the Plaintiff by Builders Mutual Insurance Company.

### I. VENUE AND JURISDICTION

1.      This action seeks a determination of the rights and obligations of the parties pursuant to a policy of insurance issued by Builders Mutual Insurance Company to the Plaintiff, a resident of Obion County.

2.      All issues pertaining to the parties and the policy of insurance originated in Obion County.

### II. PARTIES

3.      The Plaintiff is a citizen and resident of Obion County, Tennessee.

4.      The Defendant, Builders Mutual Insurance Company, is an insurance company authorized to do business in the State of Tennessee.

5.      Charles Moore and Bettye Moore may claim an interest in this litigation; therefore, they are named Defendants in accordance with *Tennessee Code 29-14-107*.

### III.  FACTS

6.      In 2018, and in prior years, the Defendant, Builders Mutual Insurance Company, issued a insurance policy providing general liability coverage for the construction business operated by the Plaintiff.

7.      A copy of the insurance policy furnished by the Defendant Builders Mutual Insurance Company to the Plaintiff is attached as **EXHIBIT 1** to this Complaint.

8.      A copy of the First Amended Complaint filed by Charles Moore and Bettye Moore against Mark Cooper doing business as Cooper Construction on July 23, 2021, in the Obion County Circuit Court,  is attached as **EXHIBIT 2** to this Complaint.

9.      The Erie Insurance policy provides coverage for "General Liability", **EXHIBIT 1**, Summary Page, COMMON POLICY DECLARATION, Page 1 of 7.

10.     The Erie Insurance policy also provides coverage for "CARPENTRY-CONSTRUCTION, BUILDING CONSTRUCTION." Page 5 of 7

11.     The Exclusions to coverage are stated in the COMMERCIAL GENERAL LIABILITY COVERAGE FORM, Page 2 of 16, but the stated Exclusions are not applicable.

12.     After receiving the lawsuit filed by Charles and Bettye Moore in the Obion County Circuit Court, the Plaintiff Mark Cooper provided a copy of the lawsuit to his insurance provider, Defendant Builders Mutual Insurance Company.

-2-

13.     Builders Mutual Insurance Company then retained Paul Brewer and Olivia Park, attorneys with the law firm of McAngus Goudelock & Courie LLC in Nashville, TN, to defend Mark Cooper dba Cooper Construction in the lawsuit filed by Charles and Bettye Moore.

14.     Paul Brewer and Olivia Park, along with local counsel Steve Conley, represented Plaintiff Mark Cooper dba Cooper Construction for more than three (3) years as this case proceeded through discovery, pre-trial issues and finally culminated in a week long trial which took place November 18 - 22, 2024.

15.     However, after the successful conclusion of the trial, in which the jury found that the Plaintiffs were not entitled to any damages, and after Judge Parham then ordered a new trial in this case, Builders Mutual Insurance Company notified Paul Brewer and Olivia Park, as well as Mark Cooper, that the insurance company would no longer provide him counsel to represent and defend Mark Cooper dba Cooper Construction in the lawsuit filed against him by Charles and Bettye Moore.

16.     As a result of Builders Mutual Insurance Company's decision, Paul Brewer and Olivia Park filed a Motion To Withdraw (attached as **EXHIBIT 3**), which, over the objection of Mark Cooper dba Cooper Construction, was granted on February 19, 2025. An Order To Withdrawal was entered on February 26, 2025, a copy of which is attached as **EXHIBIT 4**.

17.     The Defendant, Builders Mutual Insurance Company, has not alleged that the Plaintiff breached the policy terms or failed to meet his obligations under the terms of the policy.

## IV. ISSUES

18.     At issue in this litigation is whether the terms of the policy of insurance, **EXHIBIT 1**, are applicable to the negligent construction claims, breach of contract claims, and other claims filed against the Plaintiff by Charles Moore and Bettye Moore in the Circuit Court of Obion County, Tennessee, Case CC-20-CV-25.

19.     The Plaintiff Mark Cooper avers that Builders Mutual Insurance Company owes a duty of coverage to him for any injuries or damages sustained by Charles and Bettye Moore as a result of the construction defects and other allegations set forth in their July 23, 2021 First Amended Complaint. Thus, Mark Cooper requests declaration from this Court that the policy of insurance issued to him by Builders Mutual Insurance Company does provide coverage to him for any damages sustained by the Moores as alleged in their July 23, 2021 Amended Complaint.

20.     Based upon the terms of the insurance policy issued to Plaintiff Mark Cooper by Defendant Builders Mutual Insurance Company, Cooper alleges that Builders Mutual has a duty to defend and indemnify him in regard to the Amended Complaint filed by Charles and Bettye Moore in the Obion County Circuit Court.

21.     Plaintiff Mark Cooper also alleges that Defendant Builders Mutual Insurance Company is estopped from taking, and has waived the right to take, the position that they are not obligated to defend and indemnify Mark Cooper in this case since they did provide attorneys to defend him in this matter for more than three (3) years.

WHEREFORE, the Plaintiff respectfully moves that the rights and obligations of the parties be declared by the Court; that the Court adjudicate and declare that the policy of insurance referenced

-4-

herein does provide coverage to Mark Cooper for any damages sustained by Charles and Bettye

Moore, as it relates to the construction of their home; that the Court adjudicate and declare that

Builders Mutual has a duty to provide defense counsel to represent him in the underlying litigation;

that the cost of this action be taxed to Builders Mutual Insurance Company, that he have such further

legal and equitable relief as this Court deems proper; and the Plaintiff demands a trial by jury.

This the 30th day of April, 2025.

CONLEY & CONLEY

Steve Conley, BPR No. 016439
317 S. Third Street
Union City, TN 38261
Phone: 731-885-1482
*email: steve@theconleyfirm.com*

Mark Cooper

## COST BOND

We acknowledge ourselves surety for court costs in this cause payable to the Court Clerk, excluding discretionary costs, in an amount not to exceed $1,000.00.

FILED April 30, 2025
TIME 3:40 pm
EMILY HALL, CLERK & MASTER
eh                D.C.&M.

_____
MARK COOPER

_____
CONLEY & CONLEY

# EXHIBIT 1

# BUILDERS MUTUAL INSURANCE COMPANY POLICY

FILED April 30, 2025
TIME          3:40 pm
EMILY HALL, CLERK & MASTER
        lh          D.C.&M.
                Ex. 1

**BUILDERS MUTUAL**

Post Office Box 150005
Raleigh, North Carolina 27624-0005
(800) 809-4859

☐ Builders Premier Insurance Company
☒ Builders Mutual Insurance Company

WC Policy No:

SUMMARY PAGE

| | Policy Number | Policy Period | |
|---|---|---|---|
| | | From | To |
| | CPP 0053398 07 | 04/04/2019 12:01 A.M. Standard Time at the described location | 04/04/2020 |

1815 of 4738

| Transaction |
|---|

RENEWAL DECLARATION                                        Customer #:

Terrorism coverage is included if a positive premium is shown in this line        $7.00

| Named Insured and Address | Agent |
|---|---|
| MARK COOPER 215 BRANSFORD ST UNION CITY TN  38261 | WHITE & ASSOCIATES INSURANCE A 220 N MAIN ST DYERSBURG, TN  38024-0000 |
| | Telephone:  731-285-0565                    0001482 |

| Business Description | Type of Business | Audit Period |
|---|---|---|
| RGC - WITH EMPLOYEES | INDIVIDUAL | Annual |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

## COMMON POLICY DECLARATIONS

| COVERAGE PART DESCRIPTION | PREMIUM |
|---|---|
| General Liability | $   1,091 |

| | | |
|---|---|---|
| POLICY PREMIUM | $ | 1,091 |
| DEPOSIT PREMIUM | $ | |
| TAXES AND SURCHARGES | $ | |
| TOTAL DEPOSIT PREMIUM | $ | |

Forms applicable to all Coverage Parts:        See Attached Schedule

These Declarations together with the common policy conditions, coverage declarations, coverage form(s), and form(s) and endorsements, if any, issued, complete the above number policy.

Countersigned this        Day of        ,        By _____John K. Boggs_____

                                                        Authorized Representative

Issued Date: 12/27/2018
BL0005 1099                        Insured Copy                        Page 1 of 7

**BUILDERS MUTUAL**

Post Office Box 150005
Raleigh, North Carolina 27624-0005
(800) 809-4859

☐ Builders Premier Insurance Company
☒ Builders Mutual Insurance Company

WC Policy No:

**GENERAL LIABILITY DECLARATION**

| Policy Number | Policy Period | |
|---|---|---|
| | From | To |
| CPP 0053398 07 | 04/04/2019<br>12:01 A.M. Standard Time at the described location | 04/04/2020 |

1816 of 4738

| Transaction |
|---|
| RENEWAL DECLARATION |

Customer #:

| Named Insured and Address | Agent |
|---|---|
| MARK COOPER<br>215 BRANSFORD ST<br>UNION CITY TN  38261 | WHITE & ASSOCIATES INSURANCE A<br>220 N MAIN ST<br>DYERSBURG, TN  38024-0000 |

Telephone:  731-285-0565            0001482

| Business Description | Type of Business | Audit Period |
|---|---|---|
| RGC - WITH EMPLOYEES | INDIVIDUAL | Annual |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

## GENERAL LIABILITY DECLARATIONS

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $ 2,000,000 |
| Products - Completed Operations Aggregate Limit | $ 2,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Medical Expense Limit, any one person | $ 5,000 |
| Fire Damage Limit, any one fire | $ 100,000 |
| Limited Care Custody/Control (Each Loss) | $ |
| Limited Care Custody/Control (Policy Aggregate) | $ |
| Employee Benefits Liability (Each Claim) | $ |
| Employee Benefits Liability (Aggregate) | $ |
| Hired and Non-Owned Auto Liability (Each Occurance) | |

| DEDUCTIBLES | PER CLAIM | PER OCCURRENCE |
|---|---|---|
| Premop BI | $ | |
| Products BI | $ | |
| Premop PD | $ | |
| Product PD | $ | |
| Premop BI/PD | $ | |
| Product BI/PD | $ | |

### LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY
Refer to attached schedule.

### CLASSIFICATIONS
Refer to attached schedule

**TOTAL PREMIUM FOR THIS COVERAGE PART  $     1,091**

Forms and Endorsements Applicable to this Policy See Attached Schedule

These Declarations together with the common policy conditions, coverage part declarations, coverage part coverage form(s) and form(s) and endorsements, if any, issued , complete the above numbered policy.

**Issued Date:** 12/27/2018
BCG0011 1099

Insured Copy

Page 2 of 7

**BUILDERS MUTUAL INSURANCE CO.** GENERAL LIABILITY DECLARATION

Post Office Box 150005
Raleigh, North Carolina  27624-0005

| Policy Number: | CPP 0053398 07 |
| Named Insured: | MARK COOPER |
| Agent: | WHITE & ASSOCIATES INSURANCE A | 0001482 |

1817 of 4738

# COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE

| Loc | St | Terr | Code | Premium Basis | | Per Rate | Cov @ | Premium |
|-----|----|----|----|----|----|----|----|----|
| | | | | Classification Description | | | | |
| All | TN | | 94444 | | | | O | $0.00 |
| | MINIMUM | | PREMIUM | | | | | |
| 00001 | TN | 005 | 91340 | Payroll | 16,650 | | O | $275.00 |
| | | | | CARPENTRY-CONSTRUCTION OF RESIDENTIAL PROPERTY NOT EXCEEDING | | | | |
| 00001 | TN | 005 | 91583E | Total Cost | 10,000 | | O | $13.00 |
| | | | | CONTRACTORS-SUBCONTRACT BLDG CONST,REPAIR,ETC 1,2 FAMILY DWG | | | | |
| 00001 | TN | 999 | 91340 | Payroll | 16,650 | | P | $646.00 |
| | | | | CARPENTRY-CONSTRUCTION OF RESIDENTIAL PROPERTY NOT | | | | |
| 00001 | TN | 999 | 91583E | Total Cost | 10,000 | | P | $31.00 |
| | | | | CONTRACTORS-SUBCONTRACT BLDG CONST,REPAIR,ETC 1,2 | | | | |
| 00002 | TN | 005 | 61212 | Area | 1,624 | | O | $55.00 |
| | | | | BUILDINGS OR PREMISES-BANK OR OFFICE-MERCANTILE OR MANUFACTU Products and/or Completed Operations are subject to the General Aggregate Limit. | | | | |
| 00004 | TN | 005 | 61212 | Area | 1,200 | | O | $41.00 |
| | | | | BUILDINGS OR PREMISES-BANK OR OFFICE-MERCANTILE OR MANUFACTU Products and/or Completed Operations are subject to the General Aggregate Limit. | | | | |
| 00007 | TN | 005 | 91583E | Total Cost | 5,000 | | O | $7.00 |
| | | | | CONTRACTORS-SUBCONTRACT BLDG CONST,REPAIR,ETC 1,2 FAMILY | | | | |
| 00007 | TN | 999 | 91583E | Total Cost | 5,000 | | P | $16.00 |
| | | | | CONTRACTORS-SUBCONTRACT BLDG CONST,REPAIR,ETC 1,2 | | | | |

All

@ - P is for Products-Completed Operations, O is for All Other Hazards

**BUILDERS MUTUAL INSURANCE CO.**    GENERAL LIABILITY DECLARATION

Post Office Box 150005
Raleigh, North Carolina 27624-0005

| Policy Number: | CPP 0053398 07 |
|---|---|
| Named Insured: | MARK COOPER |
| Agent: | WHITE & ASSOCIATES INSURANCE A    0001482 |

1818 of 4738

## LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY

**Loc #** 1
215 BRANSFORD ST
UNION CITY TN 38261

**Loc #** 2
431 W REELFOOT AVE
UNION CITY TN 38261

**Loc #** 4
412 W REELFOOT
UNION CITY TN 38261

**Loc #** 7
917 N 1ST ST
UNION CITY TN 38261

**Issued Date:** 12/27/2018
BCG0011 1099

Insured Copy

Page 4 of 7

| BILL | POLICY NUMBER | PRODUCER NUMBER | AC | ACCOUNT NUMBER | AUDIT |
|------|---------------|-----------------|-----|----------------|-------|
| D | CPP 0053398 07 | 0001482 | | | ANNUAL |
| | | | | | |

1819 of 4738

## COMMERCIAL GENERAL LIABILITY SCHEDULE

| LOC # | CLASS CODE | LOCATION ADDRESS (IF APPLICABLE) CLASSIFICATION NAME/RATING BASIS | RATE | EXPOSURE |
|-------|-----------|-------------------------------------------------------------------|------|----------|
| All | | **Tennessee**　　　REMAINDER OF STATE | | |
| | 94444 | MINIMUM　PREMIUM INSMP | | |
| 00001 | | **Tennessee**　　　REMAINDER OF STATE | | |
| | 91340 | CARPENTRY-CONSTRUCTION OF RESIDENTIAL PROPERTY NOT EXCEEDING PREMOP　　　PAYROLL | 16.54500 | $ 16,650.00 |
| | 91583E | CONTRACTORS-SUBCONTRACT BLDG CONST,REPAIR,ETC 1,2 FAMILY DWG PREMOP　　　TOTAL COST | 1.30600 | $ 10,000.00 |
| | 91340 | CARPENTRY-CONSTRUCTION OF RESIDENTIAL PROPERTY NOT PRODCO　　　PAYROLL | 38.79000 | $ 16,650.00 |
| | 91583E | CONTRACTORS-SUBCONTRACT BLDG CONST,REPAIR,ETC 1,2 PRODCO　　　TOTAL COST | 3.10300 | $ 10,000.00 |
| 00002 | | **Tennessee**　　　REMAINDER OF STATE | | |
| | 61212 | BUILDINGS OR PREMISES-BANK OR OFFICE-MERCANTILE OR MANUFACTU PREMOP　　　AREA | 34.16100 | 1,624.00 |
| 00004 | | **Tennessee**　　　REMAINDER OF STATE | | |
| | 61212 | BUILDINGS OR PREMISES-BANK OR OFFICE-MERCANTILE OR MANUFACTU PREMOP　　　AREA | 34.16100 | 1,200.00 |
| 00007 | | **Tennessee**　　　REMAINDER OF STATE | | |
| | 91583E | CONTRACTORS-SUBCONTRACT BLDG CONST,REPAIR,ETC 1,2 FAMILY PREMOP　　　TOTAL COST | 1.30600 | $ 5,000.00 |
| | 91583E | CONTRACTORS-SUBCONTRACT BLDG CONST,REPAIR,ETC 1,2 PRODCO　　　TOTAL COST | 3.10300 | $ 5,000.00 |

**BUILDERS MUTUAL INSURANCE CO.**    LOCATION SCHEDULE

Post Office Box 150005
Raleigh, North Carolina 27624-0005

| Policy Number: | CPP 0053398 07 |
|---|---|
| Named Insured: | MARK COOPER |
| Agent: | WHITE & ASSOCIATES INSURANCE A    0001482 |

1820 of 4738

# LOCATION ADDRESS SCHEDULE

Prem #    1
215 BRANSFORD ST
UNION CITY, TN 38261

Prem #    2
431 W REELFOOT AVE
UNION CITY, TN 38261

Prem #    4
412 W REELFOOT
UNION CITY, TN 38261

Prem #    7
917 N 1ST ST
UNION CITY, TN 38261

**BUILDERS MUTUAL INSURANCE CO.**    FORM INVENTORY SCHEDULE

Post Office Box 150005
Raleigh, North Carolina 27624-0005

| Policy Number: | CPP 0053398 07 | |
|---|---|---|
| Named Insured: | MARK COOPER | |
| Agent: | WHITE & ASSOCIATES INSURANCE A | 0001482 |

1821 of 4738

# POLICY FORMS SCHEDULE

**Policy Level Forms**
**General Liability Forms**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CG0001 | (04/13) | CG2106 | (05/14) | CG2109 | (06/15) | CG2147 | (12/07) | CG2149 | (09/99) |
| CG2167 | (12/04) | CG2170 | (01/15) | CG2186 | (12/04) | CG2187 | (01/15) | CG2196 | (03/05) |
| CG2294 | (10/01) | CG7024 | (03/09) | CG7030 | (07/09) | CG7032 | (07/09) | CG7034 | (07/09) |
| CG7051 | (06/15) | IL0003 | (09/08) | IL0017 | (11/98) | IL0021 | (09/08) | IL0250 | (09/08) |
| IL1201 | (11/85) | | | | | | | | |

COMMERCIAL GENERAL LIABILITY

1822 of 4738

# COMMERCIAL GENERAL LIABILITY
# UNMANNED AIRCRAFT

# ENDORSEMENTS

# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new and revised endorsements, which applies to your renewal policy being issued by us:

**FOR USE WITH THE COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

**CG 21 09 – Exclusion – Unmanned Aircraft**

When this endorsement is attached to your policy, coverage is excluded with respect to bodily injury and property damage arising out of the ownership, maintenance, use or entrustment to others of any unmanned aircraft. The attachment of this endorsement will result in a reduction in coverage under Coverage **A** – Bodily Injury And Property Damage Liability to the extent that:

1. An exposure exists with respect to unmanned aircraft that are **not** owned or operated by or rented or loaned to any insured; or

2. Liability is assumed under any insured contract for the ownership, maintenance or use of unmanned aircraft.

In addition, this endorsement excludes coverage with respect to personal and advertising injury arising out of the ownership, maintenance, use or entrustment to others of any unmanned aircraft, with certain exceptions. The attachment of this endorsement will result in a reduction in coverage under Coverage **B** – Personal And Advertising Injury Liability, to the extent that an exposure exists with respect to unmanned aircraft. However, the attachment of this endorsement would **not** result in a reduction of coverage with respect to the use of another's advertising idea in your advertisement or to infringing upon another's copyright, trade dress or slogan in your advertisement.

**FOR USE WITH THE OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART:**

**CG 29 60 – Exclusion – Unmanned Aircraft**

When this endorsement is attached to your policy, coverage is excluded with respect to bodily injury and property damage arising out of the ownership, maintenance, use or entrustment to others of any unmanned aircraft. The attachment of this endorsement will result in a reduction in coverage to the extent that an exposure exists with respect to unmanned aircraft.

# BUILDERS MUTUAL INSURANCE COMPANY
# BUILDERS PREMIER INSURANCE COMPANY
## PRIVACY NOTICE

In the course of providing our products and services to you, Builders Mutual Insurance Company (BMIC) or Builders Premier Insurance Company (BPIC) may collect nonpublic personal information from you, or from third parties about you. BMIC or BPIC may gather information about you through the use of credit reporting agencies or directly through the use of written inquiries.

**Information we may obtain.** Depending on the type of product or service we are providing, BMIC or BPIC may obtain customer information, financial information, and/or health information about you.

- **Customer Information.** Customer information includes information we obtain from your application. You provide us with most of the information we need as part of the application process, such as your name, address, telephone number, and driver information.

  Customer information also includes information about your transactions with us and our service to you, such as your premium payment and claims history, accident information or medical information related to claims, as well as items such as payroll information, and motor vehicle reports.

- **Financial Information.** Financial information is information covered by the Fair Credit Reporting Act and includes information such as your credit history, income, assets, type and value of other insurance products you own or for which you have applied, and the amount of insurance premiums you pay to other insurance companies. The kind of information we may gather depends on the type of policy or contract you have with us.

- **Health Information.** Health information includes information about your health and medical history, and your insurance underwriting risk factors.

**Sharing Information about you.** We may share information about you in the normal course of conducting insurance operations, such as providing you with an insurance quote, processing, servicing, and administering your insurance policy and your claims. We are permitted by law to share information about you when you become a BMIC or BPIC customer or claimant with, for example:

- A third party that performs services for us, such as claims administration, claims investigations, appraisal or detection of fraud or misrepresentations;
- Medical care providers where reasonably necessary for a purpose permitted by law;
- Companies affiliated with Builders Mutual Insurance Company for purposes permitted by law;
- Insurance regulatory authorities and reporting agencies;
- Your State Motor Vehicle Department to obtain a report of any accidents or convictions;
- Law enforcement agencies or other governmental authorities to report suspected illegal activities;
- Persons or organizations conducting insurance actuarial or research studies, subject to appropriate confidentiality agreements; and
- As otherwise permitted or required by law.

**Independent Sales Agents.** Sales agents representing BMIC or BPIC are independent, and may gather and retain customer information, financial information and/or health information about you. The use and protection of that information by your agent is that agent's responsibility, not the responsibility of BMIC or BPIC. If you have any questions regarding the use and/or disclosure of information collected by the agent, please contact your agent.

**Protecting Information Gathered.** We will permit only authorized employees, who are trained in the proper handling of customer information, to have access to that information. Employees who violate our privacy policies will be subject to our normal disciplinary process.

We will not use or share, internally or externally, personally identifiable financial or health information for any purpose other than the underwriting or administration of your policy, claim or account, or as disclosed to you when the information is collected, or to which you consent.

**How to Review and Correct Your Personal Information.** If you ask us in writing to send personal information from your file to you, we will honor that request, except for certain documents related to claims and lawsuits. If you request medical information from your file, BMIC or BPIC, at our option, will release the information either to you or a medical care professional designated by you in writing. Upon your written request, BMIC or BPIC will inform you of the identities of persons or organizations to whom personal information about you has been furnished within the last two years.

We will inform you, upon your written request, whether or not a consumer report was requested, and if so, of the name and address of the consumer reporting agency that furnished the report.

If you believe any of our information about you is incorrect, please notify us in writing and we will investigate. We will correct any errors that we find. If we do not find any errors, you may file a statement with us that disputes the information in your file. We will send the correction or statement to anyone who received or will receive the original information. If you have any questions about the right of access to or correction of information in your file, please contact us at the address below and include a copy of some type of personal identification, such as a driver's license.

**BUILDERS MUTUAL INSURANCE COMPANY**
**P.O. BOX 150005**
**RALEIGH, NC 27624-0005**

Thank you for allowing us to serve your insurance needs. We appreciate the trust you have placed in us.

CPP 0053398 07

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Contractor's Blanket Additional Insured Endorsement
## Products - Completed Operations-A

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  Section II – WHO IS AN INSURED is amended to include as an additional insured any person or organization when you and such person or organization have agreed in a written contract or written agreement that such person or organization be added to your policy, but only with respect to liability for "bodily injury" or "property damage" caused by "your work" performed for that additional insured and included in the "products-completed operations hazard".

When the named insured is required to add an additional insured on this policy, the written contract or written agreement must be:

1.  Currently in effect or becoming effective during the term of this policy;
2.  Executed prior to a "bodily injury" "occurrence" or "property damage" "occurrence" to which this insurance would apply; and
3.  Between a Named Insured and the additional insured

B.  The insurance provided to the additional insured is subject to the following provisions:

1.  That person or organization is an additional insured only for liability caused by your negligence specifically resulting from "your work" for the additional insured as detailed in the written contract or written agreement.
2.  The Limits of Insurance (Section III) is amended to include:

    The limits applicable to the additional insured are the lesser of those specified in the written contract or agreement executed between you and the additional insured or in the Declaration of this Coverage Part, whichever is less. These Limits of Insurance are inclusive of, and are not in addition to, the Limits of Insurance shown in the Declarations and defined in Section III – Limits of Insurance.

3.  The insurance provided to the additional insured does not apply to "bodily injury" or "property damage" arising out of the rendering of, or the failure to render any professional services by you or on your behalf, but only with respect to the following operations:

    a.  Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
    b.  Providing, or hiring independent professional firms to provide, engineering, architectural or surveying services in connection with construction work you perform.

    Professional services include:

    c.  The preparing, approving, failing to prepare, approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
    d.  Supervisor or inspection activities performed as part of any related architectural or engineering activities.
    e.  However, professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

CG 70 24 03 09        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        **Page 1 of 2**
Copyright, Insurance Services Office, Inc., 1997

1824 of 4738

4.  The following replaces **Exclusion** I under 2. **Exclusions** of **Section I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **l. Damage to Your Work**

    This insurance does not apply to "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

5.  When a written contract or written agreement requires coverage to be provided for "bodily injury" or "property damage" within the "products-completed operations hazard", coverage will not apply to "bodily injury" or "property damage" which occurs after:

    a.  The period of time required by the written contract or written agreement; or

    b.  Five years from the completion of "your work" on the project that is the subject of the written contract or written agreement.

6.  Any coverage provided to the additional insured by this endorsement shall be excess over any other insurance naming the additional insured as an insured whether primary, excess, contingent or on any other basis, unless the written contract or written agreement in effect during this policy period and executed by you prior to an "occurrence" specifically requires that the insurance be provided on either a primary or on a primary and noncontributory basis.

7.  The insurance provided in this endorsement does not apply to "bodily injury", or "property damage" arising out of "your work" for which a consolidated (wrap-up) insurance program has been provided by the prime contractor, project manager or owner of a construction project in which you are involved.

8.  The following is added to **SECTION IV- COMMERCIAL GENERAL LIABILITY CONDITIONS, Paragraph 2., Duties In The Event of Occurrence, Offense, Claim or Suit:**

    e.  An additional insured under this endorsement must comply with all provisions of this section.

    f.  The company may audit or require a copy of the contract.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Notwithstanding any other provision of this policy; the insurance provided by the above does not apply to any of the following:

a. "Bodily injury", "Personal and advertising injury" or "Property damage" arising out of or relating in any way to asbestos;

b. Any claim, "suit" or proceeding arising out of or relating in any way to any demand, requirement, order, direction, determination or request that "you" or any other entity pay, repay or reimburse sums expended or to be expended to test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos;

c. Any claim, "suit" or proceeding arising out of or relating in any way to any demand, requirement, order, direction, determination or request that "you" or any other entity test for, investigate, monitor, clean up, remove, study, contain, treat encapsulate, control or take any other action regarding asbestos; or

d. Any sums that "you" become legally obligated to pay as damages because of the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos; or

e. Any loss, cost or expense arising out of or relating in any way to asbestos.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

1825 of 4738

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HAZARDOUS PROPERTIES OF LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to the policy.

This insurance does not apply to:

1.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from, or caused or contributed to, by lead, provided that such "bodily injury", "property damage" or "personal and advertising injury" results from or is contributed to by the hazardous properties of lead; or

2.  Any loss, cost or expense arising out of or resulting from, or caused or contributed to, by lead, provided that such loss, cost or expense results from or is contributed to by the hazardous properties of lead.

This exclusion includes, but is not limited to, any of the following:

1.  Costs for abatement, mitigation, removal of disposal of paint, plumbing solder, pipes and fixtures, soil or other items containing lead;

2.  Supervision, instructions, recommendations, requests, warnings or advice given or which should have been given in connection with the paragraph above; or

3.  Any obligation to share damages with or repay someone else who must pay damages because of the hazardous properties of lead.

CG 70 32 07 09

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY

1827 of 4738

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT  CAREFULLY.**

# ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

The following is added to the Commercial General Liability Coverage Form, Section II – WHO IS AN INSURED:

4. The person(s) or organizations(s) from whom equipment has been leased, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply:

a. To any "occurrence" which takes place after the equipment lease expires;

b. To "bodily injury" or "property damage" arising out of the sole negligence of the person or organization from whom equipment has been leased.

5. The person(s) or organization(s) shown in the Declarations as mortgagee, assignee, or receiver, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you.

This insurance does not apply to structural alterations, new construction and demolition performed by or for that person or organization.

6. The person(s) or organization(s) from whom you lease property but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and subject to the following additional exclusions:

This insurance does not apply to:

a. Any "occurrence" which takes place after you cease to be a tenant in that premises.

b. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization from whom you lease property.

7. The person(s) or organization(s) from whom land is leased but only with respect to liability arising out of the ownership, maintenance or use of that part of land leased to you.  The following additional exclusions apply:

This insurance does not apply to:

a. Any "occurrence" which takes place after you cease to lease that land;

b. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization from whom land has been leased.

8. Any state or political subdivision subject to the following additional provisions:

This insurance applies only with respect to the following hazards for which the state or political subdivision has issued a permit in connection with premises you own, rent, or control and to which this insurance applies:

a. The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners, or decorations and similar exposures; or

b. The construction, erection, or removal of elevators; or

c. The ownership, maintenance, or use of any elevators covered by this insurance.

**CG 70 34 07 09**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

Page 1 of  2

9. Any architect, engineer or surveyor engaged by you but only with respect to liability arising out of your premises or "your work".

This insurance, with respect to such architects, engineers, or surveyors, does not apply to "bodily injury", "property damage", "personal and advertising injury" arising out of the rendering or failure to render any professional services by or for you including:

a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field order; change orders, or drawings and specifications; and

b. Supervisory, inspection, architectural or engineering activities.

10. Any person or organization other than an architect, engineer or surveyor, which requires in a "work contract" that such person or organization be made an insured under this policy. However, such person or organization shall be an insured only with respect to covered "bodily injury", "property damage", "personal and advertising injury" caused, in whole or in part, by:

a. Your acts or omissions; or

b. The acts or omissions of those acting on your behalf;
In the performance of your ongoing operations for the additional insured(s) only at the location designated by the "work contract"

The coverage afforded to such person or organization does not apply to "bodily injury", "property damage", "personal and advertising injury" occurring after the earliest of the following times:

a. When "your work" under the "work contract" (other than service, maintenance or repairs) has been completed.

b. When that portion of "your work" under the "work contract" out of which any injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

c. When our coverage for you under this policy or a renewal of this policy terminates and is not continued by other insurance provided by us. "Work contract" means a written agreement into which you enter for work performed by you or on your behalf.

11. Any person or organization to whom you are obligated by virtue of a written "insured contract" to provide insurance such as is afforded by this policy, but only with respect to liability arising out of the ownership, maintenance, or use of that part of any premises or land leased to you.

This does not apply to:

a. Any "occurrence" that takes place after you cease to be a tenant on those premises, or cease to lease the land; or

b. Structural alterations, new construction or demolition operations performed by or on behalf of such insured.

**SECTION V-DEFINITIONS**
The following is added:

23. "Work contract" means a written agreement into which you enter for work performed by you or on your behalf.

**CG 70 34 07 09**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

CG 70 51 06 15

# COMMERCIAL GENERAL LIABILITY

## ENHANCEMENT ENDORSEMENT

**This endorsement modifies insurance provided under the following:**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

### SUMMARY OF COVERAGE AND INDEX

This is a summary of the various coverages provided by this form. No coverage is provided by this summary. This endorsement is subject to the provisions of your policy, which means that it is subject to all limitations and conditions applicable to the coverage forms attached to this policy unless specifically deleted, replaced, or modified herein. This endorsement is applicable only to those premises described in the Declarations.

### INDEX

| | | |
|---|---|---|
| 1. | Bodily Injury – Mental Anguish | Included |
| 2. | Off Premises Care, Custody Or Control Coverage | $25,000 |
| 3. | Incidental Medical Malpractice | Included |
| 4. | Amendment Of Insured Contract Definition | Included |
| 5. | Liberalization Clause | Included |
| 6. | Unintentional Failure To Disclose Hazards | Included |
| 7. | Lost Keys Of Others | $500 Occurrence/$1,500 Aggregate |
| 8. | Medical Payments | $15,000 |
| 9. | Broadened Mobile Equipment | Included |
| 10. | Newly Formed Or Acquired Organizations | Included |
| 11. | Non-Owned Aircraft | Included |
| 12. | Watercraft Coverage Enhancement | Included |
| 13. | Aggregate Limits Per Project | Included |
| 14. | Personal And Advertising Injury - Electronic Publication | Included |
| 15. | Property Damage Liability - Borrowed Equipment | $25,000 |
| 16. | Supplementary Payments (Bail Bonds) Enhancement | $5,000 |
| 17. | Damage To Premises Rented To You Limit | $500,000 |
| 18. | Knowledge Of An Occurrence, Claim, Or Suit | Included |
| 19. | Voluntary Property Damage Coverage | $5,000 Occurrence/$10,000 Aggregate |
| 20. | Waiver Of Transfer Of Rights Of Recovery Against Others | Included |
| 21. | Duties In The Event Of Occurrence, Offense, Claim Or Suit | Included |
| 22. | Primary And Noncontributory – Other Insurance Condition | Included |

## 1. Bodily Injury (Mental Anguish)

**SECTION V – DEFINITIONS** Paragraph 3. "Bodily injury" is replaced by the following:

    **3.** "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

## 2. Off Premises Care, Custody, Or Control Coverage

The following coverage is added:

    **A.** We will pay those sums that you become legally obligated to pay as damages because of "property damage" to personal property of others while in your or your "employees" care, custody, control, or real property of others over which you or your "employees" are exercising physical control if the "property damage" arises out of your business operations. This insurance applies to "property damage" only if:

        **1.** The "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **2.** The "property damage" occurs during the policy period.

This Coverage is also subject to the provisions of paragraphs **B., C., D.,** and **E.** below.

    **B.** Exclusions

    The insurance provided by this Off Premises Care, Custody or Control Coverage shall not apply to:

        **1.** "Property damage" to:

            **a.** real property or premises owned, rented, operated, used or leased by you;

            **b.** personal property while such property was located at real property or premises described in **a.** above;

            **c.** any "auto" owned or operated by or leased to or rented by or loaned to:

                **(1)** your "employees",

                **(2)** your subcontractors

                **(3)** your subcontractors' employees

                **(4)** anyone performing work for or on behalf of your sub-contractors while such subcontractor is performing work on your behalf

            **d.** arising out of the ownership, maintenance, use or entrustment of any "auto";

            **e.** "mobile equipment" leased or rented to you, or someone performing work on your behalf, under a short-term or long-term rental or lease agreement.

            **f.** property while it is being transported on, in, or upon any "auto", "mobile equipment", watercraft, railcar or aircraft, including and during "loading or unloading."

            **g.** premises you (sell) sold, gave (give) away or abandoned (abandon), if the "property damage" arises out of any part of those premises.

            **h.** "your work" arising out of it or any part of it whether or not "your work" was performed by you or performed on your behalf by a subcontractor;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

1029 of 4738

    i.  that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    j.  "your product"; or

    k.  tools, "mobile equipment or any other equipment or machinery used in the construction trades that are:

        (1)  owned by,

        (2)  rented by, or

        (3)  leased to, or

        (4)  borrowed by any of your "employees," your subcontractors or any person employed or hired by your subcontractors for or while performing work on your behalf.

**2.**  Any claim or "suit" for "property damage" under this Off Premises Care, Custody Or Control Coverage that is also a claim for "loss" under Section 5. Voluntary Property Damage Coverage provided by this endorsement.

**3.**  "Property damage" included in the "products-completed operations hazard".

**4.**  Any claim or "suit" arising out of the same "occurrence" where we also paid damages for "property damage" that an insured was legally obligated to pay under Coverage A (of Section I)

**5.**  The cost of repairing or replacing:

    (a)  Any of your work defectively or incorrectly done by you or by others on your behalf: or

    (b)  Any product manufactured, sold, or supplied by you, unless the "property damage" is caused directly by you after taking delivery of the product or completion of the work and resulting from a subsequent undertaking.

**C.**  Limits Of Insurance – The most we will pay for "property damage" under this **Off Premises Care, Custody Or Control Coverage** is $25,000 for each "occurrence." The maximum amount we will pay for the sum of all damages covered under this **Off Premises Care, Custody, Or Control Coverage** because of "property damage" during the policy period is an annual aggregate of $25,000

**D.**  Deductible –

We will not pay for "property damage" for any one "occurrence" until the amount of "property damage" exceeds $250. If a "property damage" deductible applies to any potential claim or "suit" for an "occurrence" under Coverage A (of **SECTION I**), that deductible shall apply if it is greater than $250.

**E.**  Your Obligations Under this **Off Premises Care, Custody, or Control Coverage**

In the event of "property damage" covered by this **Off Premises Care, Custody or Control Coverage** you shall, if requested by us, replace the property or furnish the labor andmaterials necessary for repairs thereto at your actual cost, excluding profit or overhead charges.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

## 3. Incidental Medical Malpractice

**SECTION II – WHO IS AN INSURED**

Subparagraph 2. Each of the following is also an insured:

a.   **(1) (d)** is deleted in its entirety and replaced as follows:

**(d)**   Arising out of his or her providing or failing to provide professional health care services. Exclusion 2.a.(1)(d) does not apply to nurses, paramedics or emergency medical technicians (EMS) if you are not in the business or occupation of providing any such professional services.

## 4. Amendment Of Insured Contract Definition

**SECTION V - DEFINITIONS**

Paragraph **9.a.c.** and **f.** of the **Definitions** Section is replaced by the following:

9.   "Insured contract" means:

a.   A contract for the lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damages by fire, lightning, "explosion" or sprinkler leakage to premises while rented to you or temporarily occupied by you with the permission of the owner is not an "insured contract";

c.   Any easement or license agreement;

f.   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**(1)**   This paragraph f. (1) is deleted.

## 5. Liberalization Clause

If after the effective date of this Commercial General Liability Endorsement but before the end of the policy period, we file and receive approval from the appropriate insurance regulatory authorities to use a revised Commercial General Liability Endorsement, then any provision of this revised endorsement that provides increased or broader coverage for an insured without an additional premium charge, we will automatically provide such increased or broader coverage under this endorsement as of the day the revision is effective in your state(s) shown in the Declarations

## 6. Unintentional Failure To Disclose Hazards

**SECTION IV – GENERAL LIABILITY CONDITIONS**
**6.   REPRESENTATIONS**
The following is added:

d.   Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not reject coverage under this Coverage Part solely on such failure.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

1830 of 4738

## 7. Lost Keys Of Others

### SECTION I – COVERAGES

### COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**2. Exclusions:** The following is added to **j. (4)**

**(4)** This exclusion does not apply to the loss of or damage to keys entrusted to you in your ongoing business operations described in the Declarations.

This coverage does not apply to "bodily injury" "property damage" or "personal and advertising injury" caused by misappropriation, secretion, conversion, infidelity or any act of dishonesty on the part of any Insured, employees, agents or subcontractors working on the insured's behalf.

### SECTION III-LIMITS OF INSURANCE

The following is added:

**8. Lost Key Liability Limits**

The most we will pay under this insurance for the actual and necessary expense to re-key or to adjust locks to accept new keys or; if required, new locks including cost of their installation at the customer's premises as a result of loss of or damaged keys entrusted to you by others is the limit of insurance shown below for this coverage:.

**$500 each occurrence $1,500 aggregate**

The aggregate limit is the most, subject to the each occurrence limit, we will pay for all claims for all expenses to which this insurance applies.

Each occurrence and aggregate limits described above are the most we will pay regardless of the number of insured's. The limits shown above are subject to and not in addition to the general aggregate limit shown in the Declaration of the policy. Claim payments made under these limits of insurance are part of and do erode the policy general aggregate limit of insurance shown in the declarations.

## 8. Medical Payments

### SECTION I – COVERAGES

### COVERAGE C – MEDICAL PAYMENTS

The following is added:

If Section I, Coverage **C** – Medical Payments is not otherwise excluded under this insurance, the Medical Expense Limit shown in the Declarations shall be the greater of:

$15,000; or

The amount shown in the declarations

## 9. Broadened Mobile Equipment

### SECTION V – DEFINITIONS

Section V – Definitions Paragraph 12. f. (1) is replaced by the following:

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not for construction or resurfacing; or

**(c)** Street cleaning provided that vehicles have a Gross Vehicle Weight of 1,000 pounds or greater

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

## 10. Newly Formed Or Acquired Organizations
### SECTION II – WHO IS AN INSURED
Paragraph **3.** and subparagraphs **a., b.** and **c.** are changed as follows:

3. Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision applies only until the 90th day after you acquire or form the organization or at the end of the policy period, whichever is earlier.

   b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

   No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

## 11. Non-Owned Aircraft

The following is added to Subparagraph g. of 2. Exclusions of **SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   **(6)** An aircraft with a paid crew, that is hired, chartered or loaned but is not owned by the insured.

## 12. Watercraft Coverage Enhancement

Sub-paragraph **(2)** of paragraph g. **Aircraft, Auto Or Watercraft** of paragraph **2. Exclusions of Section I - Coverage A** are replaced by the following:

   g. **Aircraft, Auto, Or Watercraft**
      (2) A watercraft you do not own that is:
         (a) Less than 51 feet long; and
         (b) Not being used to carry persons or property for a charge;

## 13. Aggregate Limits Per Project

A. For all sums which the Insured becomes legally obligated to pay as damages caused by "occurrences" under Coverage **A** (Section I), and for all medical expenses caused by accidents under Coverage **C** (Section I), which can be attributed only to ongoing operations at a single construction project away from premises owned by or rented to you:

   1. A separate Single Construction Project General Aggregate Limit applies to each construction project away from premises owned by or rented to you, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

   2. The Single Construction Project General Aggregate Limit Is the most we will pay for the sum of all damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products- completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

   a. Insureds;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits."

3. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Single Construction Project General Aggregate Limit for that construction project away from premises owned by or rented to the insured. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Single Construction Project General Aggregate Limit of any other separate construction project away from premises owned by or rented to the insured.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Single Construction Project General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Coverage **A** (Section I),and for all medical expenses caused by accidents under Coverage **C** (Section I), which cannot be attributed only to ongoing operations at a single construction project away from premises owned by or rented to you:

1. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Single Construction Project General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard," regardless whether such liability arose from:

1. any construction project from premises owned by or rented to you; or

2. any construction project away from premises owned by or rented to you

will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Single Construction Project General Aggregate Limit.

D. If a single construction project away from premises owned by or rented to you has been abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same single construction project.

E. The provisions of Limits of Insurance (Section III) not otherwise modified by this endorsement shall continue to apply as stipulated.

## 14. Personal And Advertising Injury - Electronic Publication

A. Sub-paragraphs **b., d.,** and **e** of paragraph **14.** "Personal and Advertising Injury" (of Section V–Definitions) are replaced by the following:

b. Malicious prosecution or abuse of process;

d. Oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

    **e.**  Oral, written, televised, videotaped or electronic publication of material that violates a person's right of privacy;

**B.**  The following offense is added under the list of offenses under paragraph **14.** "Personal and Advertising Injury" (of Section **V** – Definitions):

    **h.**  Discrimination or humiliation that results in injury to the reputation of a person, but only if such discrimination or humiliation is:

        **(1)**  Not done intentionally by or at the direction of:
            **(a)**  An insured; or
            **(b)**  Any "executive officer" director, stockholder, partner or member of the insured; and

        **(2)**  Not directly or indirectly related to the employment, prospective employment, or termination of employment of any person or persons by any insured.

**C.**  Sub-paragraphs **b. Material Published With Knowledge Of Falsity** and **c. Material Published Prior To Policy Period** of paragraph **2. Exclusions** of Section **I** – Coverages. Coverage **B** - Personal And Advertising Injury Liability are replaced by the following:

    **b.**  **Material Published With Knowledge Of Falsity**
       "Personal and advertising injury" arising out of oral, written, televised, videotaped or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

    **c.**  **Material Published Prior To Policy Period**
       "Personal and advertising injury" arising out of oral, written, televised, videotaped or electronic publication of material whose first utterance, publication, or broadcast took place before the beginning of the policy period;

## 15. Property Damage Liability - Borrowed Equipment
The following is added:

"Property Damage" to borrowed equipment while at a jobsite and while not being used to perform operations. The most we will pay for "property damage" to any one borrowed equipment item under this coverage is $25,000 per occurrence. The insurance afforded under this provision is excess over any valid and collectible property insurance (including deductible) available to the insured, whether primary, excess, and contingent or on any other basis.

## 16. Supplementary Payments (Bail Bonds) Enhancement

Sub-paragraph **b.** of paragraph **1.** of **SUPPLEMENTARY PAYMENTS – COVERAGES A And B** (of **SECTION I**) is replaced by the following:

    **b.**  Up to $5,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

## 17. Damage To Premises Rented To You Limit

If damage by fire, lightning, "explosion" or sprinkler leakage to premises while rented to you or temporarily occupied by you with permission of the owner under **Coverage A** is not otherwise excluded from this insurance, the following applies:

**A.** The last paragraph of **Coverage A (Section I)** – Paragraph **2. Exclusions** –is replaced by the following:

Exclusions **c.** through **n.** do not apply to damage by fire, lightning, "explosion" or sprinkler leakage to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **Section III - Limits of Insurance.**

**B.** Paragraph **6.** of **Section III - Limits of Insurance –** is replaced by the following;

**6.** Subject to paragraph **5.** above, the **Damage To Premises Rented To You Limit** The most we will pay for Fire Damage Limit is $500,000 under Coverage **A** for damages because of "property damage" to any one premises while rented to you, or in the case of damage by fire, lightning, "explosion", or sprinkler leakage, while rented to you or temporarily occupied by you with the permission of the owner.

**C.** Sub-paragraph **b.(1)(b)** of Condition **4. Other Insurance (Section IV - Commercial General Liability Conditions).**is replaced by the following:

**(b)** That is Fire, Lightning, "Explosion" or Sprinkler Leakage insurance for premises rented to you or temporarily occupied by you with the permission of the owner;

**D.** Paragraph **9.a.** of the definition of "insured contract" in **Section V-Definitions** is replaced by the following:

**9.** "Insured Contract" means:

**a.** A contract for the lease of premises. However, that portion of the contract for the lease of premises that indemnifies any person or organization for damages by fire, lightning, "explosion" or sprinkler leakage to premises while rented to you or temporarily occupied by you with the permission of the owner is not an "insured contract";

**E.** The following definition is added to Section **V – Definitions:**

**23.** "**Explosion**" means a sudden release of expanding pressure accompanied by a noise, a bursting forth of material and evidence of the scattering of debris to locations further than would have resulted by gravity alone.

**a.** "Explosion" does not include any of the following: Artificially generated electrical current including electrical arcing that disturbs electrical devices, appliances or wires;

**b.** Rupture or bursting of water pipes;

**c.** "Explosion" of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control; or

**d.** Rupture or bursting caused by centrifugal force.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

## 18. Knowledge Of Occurrence, Claim, Or Suit

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS – AMENDMENTS**

The following is added to paragraph **2.**

    **e.** The Duties in paragraph **2.** do not apply until after the "occurrence" or offense to:

        **(1)** You, if you are an individual;

        **(2)** A Partner, if you are a partnership;

        **(3)** An "executive officer" or insurance manager, if you are a corporation;

        **(4)** Your elected or appointed officials, trustees, board members, or your insurance manager if you are an organization other than a partnership, joint venture, or limited liability company.

## 19. Voluntary Property Damage Coverage:

The following coverage is added:

At your request, we will pay for "loss" to tangible property of others arising out of your business operations. The most we will pay for this coverage is $5,000 for each "occurrence" with a $10,000 aggregate limit during the policy period. The "loss" must occur during the policy period and in the "coverage territory."

"Loss" means unintended damage or destruction. "Loss" does not mean disappearance, abstraction, theft, or voluntary parting with property as a result of trick, scheme, or false pretense.

Voluntary Property Damage Coverage does not apply to:

    **A.** Damage arising out of the ownership, maintenance, use, or entrustment of any "auto";

    **B.** Property you own, occupy, rent or lease from others, or

    **C.** Property on your premises for sale, service, repair or storage.

If the policy to which this endorsement is attached is written with a property damage liability deductible, the deductible shall apply to this Voluntary Property Damage Coverage. The limits of coverage stated above shall not be reduced by the amount of this deductible.

## 20. Waiver Of Transfer Of Rights Of Recovery Against Others

**Paragraph 8. Transfer Of Rights Of Recovery Against Others To Us** (of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**)

The following is added:

We will waive any right of recovery we may have against a person or organization because of payments we have made under this insurance for injuries or damages arising out of "your work" done under a written contract with that person or organization provided that:

    **a.** Such written contract with that person or organization contains a contractual provision that prevents you from exercising your right(s) of recovery against such person or organization

Our waiver of any right of recovery as stated above only applies to that person or organization identified above and only if the injury or damage occurs during the policy period and subsequent to the execution of such written contract.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

1833 of 4738

21. **Duties In The Event Of Occurrence, Offense, Claim, Or Suit**

Paragraph 2.a., **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS,**

The following is added to **a.**

Knowledge of an "occurrence", claim or "suit" by the agent, servant or "employee" of any insured shall not in itself constitute knowledge of the insured unless;

- You, if you are an individual;
- A partner, if you are a partnership;
- A member or manager, if you are a limited liability company;
- An executive officer or designee, if you are a corporation;
- A trustee, if you are a trust; or
- A designee, if you are any other type of organization.
  shall have received notice from its agent, servant or "employee."

Paragraph 2.b., **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS,**

The following is added to **b.**

Knowledge of an "occurrence", claim or "suit" by the agent, servant or "employee" of any insured shall not in itself constitute knowledge of the insured unless;

- You, if you are an individual;
- A partner, if you are a partnership;
- A member or manager, if you are a limited liability company;
- An executive officer or designee, if you are a corporation;
- A trustee, if you are a trust; or
- A designee, if you are any other type of organization.
  shall have received notice from its agent, servant or "employee."

22. **Primary And Noncontributory - Other Insurance Condition**

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

(1) The additional insured is a Named Insured under such other insurance; and

(2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 22 94 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion l. of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

BIL 0006 0102

1835 of 4738

# BUILDERS MUTUAL INSURANCE COMPANY

## DATE OF ANNUAL MEETING

This notice is applicable to company policies with the following coverage:

COMMERCIAL AUTO COVERAGE PART
BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROFESSIONAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
BUSINESSOWNERS POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM
PERSONAL AUTO POLICY
PERSONAL AUTO PHYSICAL DAMAGE POLICY

The annual meeting of the members of the Company will be held at the registered corporate office of the Company on the first Friday in December of each year, at 10:00 a.m. In case the Board of Directors shall elect to change the time or place of such meeting, due notice will be mailed or delivered to each policyholder at the address stated on the Declarations Page of this policy at least ten (10) days prior thereto.

IL 6000 0115

1836 of 4738

# POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

**TERRORISM COVERAGE IS OPTIONAL ON BUILDERS MUTUAL AND BUILDERS PREMIER. READ THIS IMPORTANT NOTICE.**

Coverage for Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Extension Act, is optional. Rejecting this coverage will reduce your premium.

**Policyholder Rejection of Terrorism Insurance Coverage – Builders Best Policies ONLY**

### TERRORISM RISK INSURANCE EXTENSION ACT

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act. The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

IL 6000 0115

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

If your policy(ies) cover(s) property located in GA, NC, or VA the terrorism exclusion makes an exception for fire losses to such covered property resulting from acts of terrorism.  If you choose to decline coverage for acts of terrorism, that rejection is not applicable to fire losses to property in the above listed states resulting from acts of terrorism.

IL 6000 0115

1837 of 4738

The chart below illustrates the portion of your annual premium that is attributable to coverage for certified acts of terrorism:

| Builders Best Multi-Line Comm. Pkg. Policy (CPP) | Single Line Policy Rate |
|---|---|
| $14.00 | $7.00 |

In the context of a newly issued policy or renewal offer, this form becomes part of the application for this coverage.

____ I hereby elect to exclude losses arising from certified acts of terrorism. I understand that if I exclude terrorism coverage, coverage will not be available until my next renewal. I further understand that in order to reactivate this coverage, I must inform the Company in writing.

Terrorism coverage is automatically included on all Builders Best policies, new and renewal, until and/or unless rejected by exercising this form.

_____    _____
*Policyholder's/Applicant's Signature*    *Policy Number*
(you must complete a form for
each BMIC/BPIC policy* from
which you wish to exclude
Terrorism coverage)

_____    _____
*Print Name*    *Date*

*Note: if you reject this coverage from an underlying policy, you must also reject this coverage from your umbrella policy, if applicable.*

**Policyholder:** Should you decide to reject this coverage, return this completed form to your Agent.
**Agent:** Submit this form to the Underwriting Department at Builders Mutual Insurance Company.

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

1838 of 4738

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion 2.p. of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph 2. Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

CG 21 06 05 14                © Insurance Services Office, Inc., 2013                Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 21 09 06 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or water craft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(e) "Bodily injury" or "property damage" arising out of:

(i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(ii) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

B. The following exclusion is added to Paragraph 2. Exclusions of Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Unmanned Aircraft

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

a. The use of another's advertising idea in your "advertisement"; or

b. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

C. The following definition is added to the Definitions section:

"Unmanned aircraft" means an aircraft that is not:

1. Designed;

2. Manufactured; or

3. Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

IL 00 17 11 98

1840 of 4738

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

IL 00 21 09 08                © ISO Properties, Inc., 2007                **Page 1 of 2**

1841 of 4738

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007

IL 02 50 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TENNESSEE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

The refund will be pro rata if:

**a.** We cancel; or

**b.** The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

The refund may be less than pro rata if the first Named Insured cancels the policy.

The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**1.** Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

**2.** Your conviction of a crime increasing any hazard insured against;

**3.** Discovery of fraud or material misrepresentation on the part of either of the following:

**a.** You or your representative in obtaining this insurance; or

**b.** You in pursuing a claim under this policy;

**4.** Failure to comply with written loss control recommendations;

**5.** Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

**6.** Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

1842 of 4738

7. Your violation or breach of any policy terms or conditions; or

8. Other reasons that are approved by the insurance commissioner.

Notice of cancellation will state the reason for cancellation.

C. The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

   a. We have offered to issue a renewal policy; or

   b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

D. The following is added to the **Premiums Common Policy Condition:**

Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return, within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

1843 of 4738

© Insurance Services Office, Inc., 2008              **IL 02 50 09 08**

IL 12 01 11 85

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change
Number CPP 0053398 07

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| CPP 0053398 07 | | BUILDERS MUTUAL INSURANCE CO. Post Office Box 150005 |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MARK COOPER | |

COVERAGE PARTS AFFECTED
COMMERCIAL GENERAL LIABILITY

CHANGES

EFF 4/4/15 FORM CG2187 01 07 REPLACED BY CG2187 01 15
FORM CG2170 01 08 REPLACED BY CG2170 01 15

John K. Boggs

Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph **2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

f.  **Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

1845 of 4738

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

1846 of 4738

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

b. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

c. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

a. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

b. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

1847 of 4738

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION
# AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

CG 21 86 12 04                © ISO Properties, Inc., 2003                Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 15

1849 of 4738

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Offices, Inc., 2015

**COMMERCIAL GENERAL LIABILITY**
CG 21 87 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A. Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

1850 of 4738

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

   **EXCLUSION OF TERRORISM**

   We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

   1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015              CG 21 87 01 15

**IL N 098 09 03**

1851 of 4738

# TENNESSEE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

IL P 001 01 04

1852 of 4738

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the cover-ages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

> Foreign agents;
> Front organizations;
> Terrorists;
> Terrorist organizations; and
> Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Trea-sury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

1853 of 4738

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

1654 of 4738

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

     © Insurance Services Office, Inc., 2012     CG 00 01 04 13

1855 of 4738

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any

insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

1056 of 4738

**j.  Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.  Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software,

including systems and applications soft-ware, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing de-vices or any other media which are used with electronically controlled equipment.

q. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, or-dinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and addi-tions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or dis-tribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III – Limits Of Insurance.**

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance;** and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supple-mentary Payments – Coverages **A** and **B.**

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "per-sonal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's adver-tising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's

name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o. **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

p. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

## COVERAGE C – MEDICAL PAYMENTS

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

         (a) The accident takes place in the "coverage territory" and during the policy period;

         (b) The expenses are incurred and reported to us within one year of the date of the accident; and

         (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

      To any insured, except "volunteer workers".

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers' Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   f. **Products-Completed Operations Hazard**

      Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

      Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.  This insurance applies to such liability assumed by the insured;

c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.  The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1.  If you are designated in the Declarations as:

a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e.  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

    © Insurance Services Office, Inc., 2012

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

© Insurance Services Office, Inc., 2012

1859 of 4738

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

1860 of 4738

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding,

building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

© Insurance Services Office, Inc., 2012

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

          © Insurance Services Office, Inc., 2012          CG 00 01 04 13

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., **Exclusions** of Section I - Coverage A - Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., **Exclusions** of Section I - Coverage B - Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

1062 of 4738

# EXHIBIT 2

# FIRST AMENDED COMPLAINT
# FILED BY
# CHARLES AND BETTYE MOORE

FILED April 30, 2025
TIME 3:40 pm
EMILY HALL, CLERK & MASTER
                eh            D.C.&M.
                        Ex. 2

**IN THE 27ᵗʰ JUDICIAL DISTRICT OF THE STATE OF TENNESSEE**
**OBION COUNTY CIRCUIT COURT**

OBION COUNTY
CIRCUIT COURT CLERK
FILED M.
3:15
JUL 23 2021

HARRY JOHNSON
AP ____ D.C.

**CHARLES MOORE and**
**BETTYE MOORE,**

      **Plaintiffs,**

**VS.**

      **Civil Action No.: CC-20-CV-25**
      **Jury Demanded**

**MARK COOPER, d/b/a**
**COOPER CONSTRUCTION,**

      **Defendant.**

---

### FIRST AMENDED COMPLAINT

---

COME NOW the Plaintiffs in this matter, by and through their attorney, and in support of this Complaint state:

1.    The Plaintiffs are citizens and residents of Obion County, Tennessee.

2.    The Defendant, Mark Cooper, is an individual who resides at 927 East County Home Road, Union City, Tennessee 38261, and does business as Cooper Construction, whose address is also 215 East Bransford Street, Union City, Tennessee 38261.

### Averments of Fact

3.    The Plaintiffs contracted with the Defendant for the construction of a home in Obion County, Tennessee. At the time they engaged the Defendant to build the home, they were residents of Baton Rouge, Louisiana.

4.     The Plaintiffs chose house plans from House Plan Zone and had them modified by WTR Consulting to become project number 2018-127 plan FHP 56929.

5.     The Defendant, Mark Cooper, was initially provided copies of the plans from House Plan Zone, which were only conceptual, without dimensions, and not sufficient to build with, and then subsequently the Moores provided Cooper with the WTR Consulting plans along with a copyright/modification release.  The Plans from WTR Consulting were complete plans approved for construction.

6.     The Plaintiffs purchased lots 16, 17, 19, and 20 in the Windram Hills subdivision in Rives, Tennessee, outside of Union City, Tennessee, all in Obion County for the construction of this new home.

7.     Sometime in late April or early May of 2018, The Plaintiffs entered into an agreement with the Defendant, after meeting with him at their recently purchased property in Obion County, to agree on a location and orientation of the home. The agreement with the Defendant was that they would pay him his cost, plus 10%, with an expected completion in the spring of 2019.

8.     The Plaintiffs received their first bill from the Defendant sometime in June or July of 2018. It was a single page bill with single line items such as permit, water bill, spray, mowing, etc. There was no information to back up the charges like invoices, explanation of charges, or anything like that. Charles Moore notified the Defendant that reimbursement requests had to be accompanied by bills, invoices, receipts, proof of payment, etc.

9.     Shortly thereafter, the Defendant made an unsolicited offer to the Plaintiffs, dated July 10, 2018, to build the house for $764,200.00, excluding yard work, exterior concrete, light fixtures, appliances, safe room, and generator. Under this proposal he was requesting seven

2

payments of $100,000.00 each, with a final payment of $64,200.00. (A copy of this offer is attached hereto as **Exhibit A.)**

10.    During this time in the second quarter of 2018, the Plaintiffs had initiated a termite remediation effort on their home in Baton Rouge, which had consumed a lot of their time and kept them in the Baton Rouge area more than they would like and away from Obion County.

11.    In late July of 2018, the Plaintiffs went to the job site and a local mason, Jimmy Gray, had about 75% of the foundation blocks laid. It was during this time that the Defendant announced adamantly to the Plaintiffs he would not build at cost plus. In response to this announcement, the Plaintiff, Charles Moore, told the Defendant to get the brick mason, Jimmy Gray, to a convenient stopping point, shut the job down, and move off the property. The Plaintiffs offered at that time to pay for the work done and purchase the materials stored on the lot. When asked about the temporary power pole, which belonged to the Defendant, Plaintiffs offered to purchase the pole and give it back to the Defendant after construction was complete.

12.    The Plaintiffs set up interviews with other builders to complete the project when the Defendant contacted the Plaintiff, Charles Moore, to meet and further discuss the project. At this meeting, Mr. Cooper proposed to build cost plus, but wanted another 5%. In other words, cost plus 15% rather than 10%. The Plaintiffs countered with a 5% bonus that would be paid at the projects successful completion defined as meeting the budget of $764,200.00, with a scheduled completion of eight months. Under the Plaintiffs' proposal the appliances, the safe room, the generator, and the security system would be purchased directly by the owner, but would be installed by the contractor without bearing any fees on the purchase price. The Plaintiffs also agreed that should the Defendant

3



complete the project under the budget target of $764,200.00, they would pay as a bonus half of the difference between the actual completion cost and the budget target.

13.    The Plaintiffs next received invoice, number 2271, dated August 6, 2018, in the amount of $30,723.89, of which only $1,227.45 was documented, and of those documented charges, one of the underlying charges was for a duplicate charge.

14.    In response to this invoice, the Plaintiffs reminded the Defendant that reimbursement for labor would require a breakdown by the name of the employee, the man hours, the labor rate for that employee, as well as taxes and documented fringe benefits attributable to each worker. Additionally, the Plaintiffs reminded the Defendant that any reimbursement of owner's supplied equipment would be limited to operating costs, maintenance, depreciation, and insurance, and he would need to submit logs showing operating hours or tachometer readings and assigned tasks.

15.    The Defendant next submitted invoice number 2277, dated August 31, 2018, which also did not include any supporting information other than emailed mobile phone photos of invoices, some of which were not at all legible. This invoice contained an $8,000.00 draw for half of rough in plumbing under a contract the Defendant had awarded to his son, Sage Cooper, in the amount of $32,000.00. This contract was let without competitive bidding which is required under Tennessee law under a cost-plus arrangement. *Forrest Construction Company, LLC vs. Laughlin 337 SW 3d 211, 223 (2009).* The invoice also included a request for payment of $9,792.00 for Jimmy Gray for laying the blocks of the foundation. Charles Moore inquired about the competitive bidding relative to Mr. Gray, and was only told by the Defendant that Jimmy's contract was "negotiated". The Plaintiff, Charles Moore, asked the Defendant for copies of each of these contracts, but was never provided one. The Plaintiffs reminded the Defendant that he was required

4



to solicit multiple proposals in order to control costs and obtain competitive pricing. This same invoice requested a payment of $7,070.00 ($2,070.00 for Backhoe rental, $4,400.00 for Bobcat rental and $600.00 for Sky Track rental) and another in the amount of $17,026.13 for "labor", with no other breakdown, justification, or explanation. The Plaintiff, Charles Moore, explained to the Defendant this was totally unacceptable.

16.     On or about September 30, 2018, the Plaintiffs received invoice number 2283 from the Defendant in the amount of $94,985.39. This invoice had no better supporting information than the prior invoices.

17.     The Plaintiff, Charles Moore, contacted the Defendant and told him the largest problem costs in this project were labor and equipment rental, both of which were supplied by the Defendant, Cooper. Mr. Moore explained to the Defendant that these costs were out of control as compared to information from the R.S. Means Estimating Guide (which allows 11.1% of home costs for foundation and slab) and needed his attention. This comparison alone indicated that Mr. Cooper's charges exceeded information in the Estimating Guide by 43%.

18.     Despite a request by the Plaintiff, Charles Moore, for a meeting with the Defendant and that the Defendant formulate some kind of remedy to control costs, there was no response from the Defendant other than his claim that the Plaintiffs were not allowed to see his cost figures.

19.     The Plaintiffs next received an invoice, number 2292, dated October 27, 2018, in the amount of $109,723.97. The invoice covered exactly four weeks, that time being October 1, 2018, through October 27, 2018. The Plaintiff, Charles Moore, contacted Gibson County Electric to determine the power consumption records on the job during that period of time and learned that there was job activity only fourteen days during this four-week period. An examination of these

5



facts based upon any reasonable assumptions and the fact that the crew at that time consisted of the Defendant's son, Sage Cooper, Brian, Chuck, an unknown laborer, and sometimes Mark Cooper, who was under contract and should not be paid hourly, demonstrates that these figures for labor were fabricated.

20.    The Defendant next submitted invoice number 2293, dated November 30, 2018, in the amount of $55,423.00. Like the other invoices, there was no supporting documentation and simply listed labor at $39,112.00, which was impossible given the crew size and the limited days worked.

21.    The Plaintiff, Charles Moore, contacted the Defendant and arranged a meeting in early December of 2018, to discuss billing issues, request supporting documentation, and the general poor performance by the Defendant relative to schedule.  The Plaintiff, Charles Moore, asked for the names of those on the framing crew that could justify such a large bill for labor. The Defendant's son, Sage Cooper, then and there admitted or claimed that he was on the framing crew, even though he had a lump sum plumbing contract, but refused to identify any others.  At that meeting, the Defendant did nothing to defend his position other than to complain that there had been bad weather. The Defendant admitted he was over budget and behind schedule and the 5% bonus was out the window. At that meeting, the Defendant predicted a cost of $935,000.00, to which Charles Moore responded was an unacceptable number.

22.    Subsequent to that meeting in December, the Defendant made no effort to defend his charging practice, nor did he make any effort to correct them. The Plaintiff, Charles Moore, wrote the Defendant a note dated December 4, 2018, recapping the circumstances. A copy of said note is attached hereto as **Exhibit B.** The Defendant later called the Plaintiff and threatened to quit

6



due to the Plaintiffs' lack of trust in him. The Defendant suggested that the Plaintiffs pay his son, Sage, and Brian, $14,000.00 for the labor to complete the framing, and that they pay $18,000.00 to complete the roof, with the later proposal to include time and materials. The Plaintiffs were in desperate need to have the project dried in and those costs, as proposed, were not believed to be unreasonable as determined by a site visit and a caparison to the numbers derived from consulting the R.S. Means Estimate Guide. Additionally, the Plaintiffs reasoned that if they could at least get the house dried in, and the Defendant were to quit, they could get another contractor to complete the job. The Plaintiff, Charles Moore, called the Defendant and told him to proceed with his proposal on completing the framing and installing the roof, but he had also checked the tach reading on the rental equipment prior to the initiation of any new work.

23.    Subsequent invoices, through March 2019, claimed 103 hours of Sky Track rental, yet when the Plaintiff, Charles Moore, checked the tach reading, it had only advanced 9.8 hours resulting in $10,252.00 for 93.2 hours of fraudulent Sky Track rental charges when the engine was off. In addition, any rental needed for installation of framing and roof should have been in lump sum proposal.

24.    The Defendant claimed that he was unable to find roofers to install the metal roof on the dormers and the front porch, resulting in the house remaining in less than water tight and delaying the installation of insulation, dry wall, etc. The Plaintiffs contracted with a third party to finish the copper metal portion of the roofing.

25.    On June 6, 2019, the Plaintiffs made written communication to the Defendant, Mark Cooper, complaining about cost overruns and delays in completion. They also complained that while the agreement was cost plus, the Defendant was unwilling, in large measure, to show any of

7



his costs in order that Plaintiffs can reconcile what they are paying to what they would owe under the agreement. They outlined in this communication their understanding with the Defendant that he would complete certain other aspects of the construction at a schedule of itemized costs which were not to be exceeded. These are all outlined in the June 6, 2019, letter as **Exhibit C.** The Plaintiff also advised the Defendant in that communication that as to any payments they had made or that would be made in the future, they would be making them reserving any and all rights they had under Tennessee law based on the grievances that had become chronic in this situation. They had advised the Defendant that payments made should not be taken as an admission on their part that the charges paid were reasonable as they had no way of reconciling charges submitted with what was in fact owed.

26.    The Plaintiffs received invoice number 2322, dated June 12, 2019, in the amount of $71,512.00. There was an entry in the amount of $31,537.50 which was for half of the cabinet maker, Jerry Guy's, total price to provide all the bathroom, master bedroom closet, laundry room, mud room, kitchen, and gun room cabinets. All cabinets were to be in finished condition. Unfortunately, Jerry Guy died during the project and his replacement came to the Plaintiff with a bill for the last quarterly payment to purchase material and finish the cabinets. Noticing discrepancies in that bill, as compared with what the Defendant had been collecting, the Plaintiff, Charles Moore, had asked for a copy of the original bid. The Defendant had told the Plaintiffs that the bid was $63,075.00; however, upon examining a copy of the actual bid, it was only $53,452.34, a difference of $9,622.66. This deception by the Defendant was not identified by the Plaintiffs until they had already paid approximately three fourths of the fraudulent charges submitted by the Defendant.

8



27.    On July 1, 2019, Plaintiffs made written communication with the Defendant, a copy of which is attached hereto as **Exhibit D**. In this communication, Plaintiffs complained about obvious cost overruns, particularly labor and equipment hire and reminding the Defendant he could only recover documented costs, plus the fees that had been agreed on. Shortly thereafter, on July 11, 2019, Plaintiffs again made written communication with Defendant, a copy of which is attached hereto as **Exhibit E,** complaining about costs overruns, the fact that the project was way past scheduled completion and the fact the Defendant had not shown the Plaintiffs any actual labor, rental equipment or subcontractor costs. They also complained about the Defendant not seeking competitive bids. The Plaintiffs also pointed out to the Defendant in that correspondence that under Tennessee law in any cost-plus contract that is an implicit understanding between the builder and the contractor that the costs must be reasonable and proper, and that the contractor is under a duty of itemizing each and every expenditure made by him on the job. The Plaintiffs cited the applicable case law, ***Forrest Construction Company vs. Laughlin, 337 SW 3d, 211,*** so he could confirm this with his independent legal advisor. The Plaintiffs in that communication also offered to meet with the Defendant and his attorney to discuss a way forward. In this communication, the Plaintiffs made clear to the Defendant that multiple bids must be solicited on all remaining parcels of work with the winning bidder to be agreed upon by the Plaintiffs, whereby the Plaintiffs would see the bid requests, bid submittal, and contractual agreement. They put the Defendant on notice that he could not self-perform lump sum work unless his bid was the lower of three bids and possessed the expertise and manpower to accomplish the work without delaying the project. The Plaintiffs again demanded that the Defendant document all of his cost-plus work as to time and material prior to any payment to them.

9



28.     Notwithstanding the Plaintiffs' demands, the Defendant did not obtain competitive bids for the sheetrock, but, the Defendant explained that whomever he claimed to have received and accepted a bid from withdrew from the job, and, as a consequence, the Defendant self-performed that aspect of the build; however, rather than including the cost of the materials as is customary in complying with what would otherwise have been performed by the third party, the Defendant added the cost of materials to the third party bid. The Defendant claimed the sheetrock bid was $23,800.00, but he never allowed the Plaintiffs to see the bid, and the Defendant added the costs of materials on top of what he said was the bid price.

29.     At one point in the construction, a door salesman came onsite and the Plaintiffs specified the type of solid wood paneled doors they required; however, the Defendant installed PVC doors as opposed to the 6 panel solid wood doors called by the Plaintiffs.

30.     The Plaintiffs then received invoice number 2331, dated October 2, 2019, in the amount of $90,194.02. The Plaintiff, Charles Moore, met with the Defendant and his son, Sage, on this bill and agreed to pay only $62,544.57, which included everything on the invoice except what was to go to Cooper, the painting, plumbing materials, and plumbing draw, plus commission for the Defendant. At this point, the Plaintiffs proposed that the house be finished, but that the Defendant simply consider himself and his son paid from all the overages and outright theft he had committed. Charles Moore reminded the Defendant that upon payment of this additional $62,544.57 the Defendant had then collected $930,000.00, and the Plaintiffs had paid another $140,000.00 for things like the copper roof, light fixtures, electrical switches, plumbing fixtures, and fittings that the Plaintiffs had paid to third parties that should have been included in the original bid, and that it would likely take another $65,000.00 to finish the job with third party labor. This

10



would result in total payments of $1,135,000.00, on a house that the Defendant estimated to only

cost $764,200.00, or a $370,800.00 over run, not to mention that the scheduled completion date had

been dragged out many months beyond the eight-month projection.

31.     The Plaintiffs then received invoice number 2333, dated October 18, 2019, in the

amount of $13,044.86. The Plaintiffs refused to pay this and insisted that the Defendant in effect

just take this as a disgorgement of unearned sums already paid by the Plaintiffs.

32.     In addition to these other breaches, the Defendant on numerous occasions submitted

multiple invoices for the same material, returned concrete sealer to the supplier that Plaintiffs had

already paid for without giving credit back to the Plaintiffs, and, in fact, there were never any credits

for materials returned, chances of which are virtually zero in a project of this size.

33.     The Defendant submitted invoices to the Plaintiffs for material that was never

incorporated into their home, and in fact would not be called for or required in the construction of

their home. The Plaintiffs, unknowing at the time of the Defendants deception, paid these invoices.

This included, but is likely not limited to, substantial charges for lumber, sheathing, expanded

polystyrene, LVL beams, and Cat Zip system decking. Including taxes and 10% upcharge the

Plaintiffs have so far identified over $33,000.00 in such excess charges, which in fact amounted to

outright theft.

34.     The Plaintiffs have obtained some actual cost information from some of the suppliers

to the Defendant in the construction of the Moore home. In comparing the actual cost information

to what the Defendant submitted to them, the Plaintiffs have discovered that the Defendant,

submitted completely fraudulent invoices from Lowe's and Jimmy Gray Masonry.    These

fraudulent invoices had costs greatly inflated over the Defendant's actual underlying costs, and the

11





Defendant then added taxes and his 10% upcharge on top of the fraudulent information. The Plaintiffs paid these invoices without knowledge of the underlying deception of the Defendant, and the Defendant used this deception to wrongfully convert the Plaintiffs money to himself.

35.    The Defendant essentially quit work on the project in late October 2019, requiring the Plaintiffs to complete the remaining work themselves.

36.    Since the Defendant's departure, the Plaintiffs have identified a number of examples of negligence and poor workmanship. Some examples are:

(a) The Defendant selected that the cooktop to be downdraft to allow for the kitchen window, then he poured the slab without vent provisions.

(b) He poured 60-foot x 36-foot concrete apron to install 2-foot x 2-foot drain basin to drain front of house and entire driveway and missed the low point of apron by 10-12 feet. Now, with any rain, the Moores have 20-foot pond in front of house and garage.

(c) The Plaintiffs have shingles falling from the roof and subsequent inspection revealed no ridge vents, inadequate overlap and improper nailing of shingles, and a lack of flashing on all dormers. When the roof was installed, the Defendant skimped on the overlap in order to improperly spread out the material, using less material than required for the job. The Plaintiffs estimate that the Defendant only used 70 to 80 percent of the total number of shingles that would have been required, had the overlaps been properly maintained. Ten square foot of ridge vents are required for the home, but there is no attic ventilation at all. This can cause a number of problems in a super-heated attic situation and, cause whatever insulation is in the attic to be ineffective. This is going to result in the entire roof having to be removed and a new roof installed.

12

 

(d) The bonus rooms above garage are for an apartment in case the Plaintiffs need live-in help, but this area has fixed windows which the Defendant installed that violate fire code if anyone sleeps there.

(e) Stairs going to the bonus room has treads that are too narrow by 1-2 inches, which is also a code violation.

(f) The remote garage opener never worked and the Plaintiffs had to get factory assistance to correct it. The outside garage door on the 3rd car bay quit working and the Plaintiffs then found out the garage door vendor was not factory qualified.

(g) The water line burst in the spring of 2020. Union City Water department was called out and advised that the leak was on the homeowner side of the meter. Further investigation revealed the water supply line was too shallow, too small, and the buried fitting was a reducer and was galvanized, not brass.

(h) The outside faucet on the south side of the house was not installed. This house is built on a slab foundation, so there is no practical way to remedy this problem.

(i) There was no insulation installed on 14 hot water lines. The plumbing of the hot water line causes long delays for hot water.

(j) Three out of six float switches on air conditioning drains have failed. One of them flooded in the dining room ceiling ruining dining room table and 2 chairs.

(k) The plumbing in the south bathroom has water hammer in supply or drain line that makes loud racket about half the time continuously, which the Plaintiffs are still unable to fix.

13



(l) Five of the 26 windows in the house have been replaced. There have been two trips by Atrium representatives, three trips by Pella, to examine the problems. The last trip the Pella rep inspected the entire house and stated none of the windows were caulked and water was inside the walls and would cause big problems. There may be wall/insulation damage as a consequence, but the windows had to be caulked. The Plaintiffs have already replaced about 20 percent of the windows that were installed because they were either improperly installed or may have been defective from the start. The representative from the window manufacturer indicated that only about 1 percent of windows are ever defective, so the Plaintiffs suspect they were probably improperly installed.

(m) Several of the gutter downspouts were just held by friction and have fallen.

(n) A rusty residue is leaching out of slate on the porches and patio staining slate and brick. The entire patio had to be regrouted and several pieces of slate on the back porch and patio required replacement. The slate contractor noted neither driveway or slate had been sealed. Mr. Cooper or his agent picked up the sealer from Southern Concrete, billed the Plaintiffs for it and then returned it for credit, but did not credit it back to the Plaintiff's account. The Plaintiffs contracted with Allen's Painting to seal the driveway and slate.

(o) Buckey Allen of Allen Paint and Supply noted paint was flaking on front columns. The Plaintiffs had the columns stripped primed and painted. The initial application of paint by the Defendant or his agent was without primer. The Plaintiffs also had Mr. Allen repair the dining room ceiling. The total cost was $3,760.00.

14





(p) The drain line (vent) from one of the furnaces has a low point and is leaking. Currently the Plaintiffs have a container catching leakage until it can be repaired.

(q) There are cracks in the trim and drywall which have been repaired twice and need it again. It may be that the trim was never properly applied and/or the materials used shrank, but the Plaintiffs are concerned this may be results of the house shifting instead of material drying.

(r)  There is no reliable evidence that rebar was used in the footing.

(s) The Defendant failed to provide one-year renewable termite warranty. The Plaintiffs installed new termite protection system $2,194.00.

(t) The septic tank was installed at grade and the drainage field does not meet the minimum 2-foot depth.  A truck delivering riprap drove over septic drainage field and collapsed 3-4 lines.

(u) Large spans of interior drywall are either convex or concave depending on which side was installed first. Blocking is required for all of the 2x4 studs on interior walls that are over 9 feet in length.  All of the interior walls in the Plaintiffs home are over 9 feet in height, and they are constructed with 2 X 4 lumber, but apparently no blocking was used resulting in this concave or convex appearance.

(v) Many of the appliances were improperly installed. The dishwasher and compactor attachment ears were taped to granite with painter's tape. There was no other attachment. The Defendants painter finally installed tape and screws. The matching refrigerator/freezer was shoved against the wall crimping the ice maker water line. Rather than applying the trim kit, the Defendant just put the trim kit was put in the attic.

15



The cabinet maker corrected the refrigerator/freezer installation. The matching refrigerator freezer set had scratches on both doors.

(w) The water supply line was undersized, which causes for poor water flow within the house. Additionally, the supply line was not buried deep enough, and it already resulted in one rupture when the line was driven over. The Plaintiffs had to repair that rupture in order to have water to their home. This line goes under the slab of the driveway and the slab of the house, and because it was not buried deep enough, will freeze in cold weather and is subject to the type of damage it has already fallen victim to.

(x) What would have been a frost-free hose bib if it had been installed properly, froze last winter because the valve portion of the hose bib did not reach far enough into the home to be insulated. Consequently, the line froze and flooded the laundry room, the master bath, and the exercise room. The Plaintiffs have had these damages repaired and, in the process, learned that the master bath, and likely all the baths, as well as the laundry room walls, were not insulated as required.

(y) The interior bathroom and laundry walls are not insulated for sound proofing.

(z) The home originally called for pocket doors in the guest bathrooms. Unfortunately, Mr. Cooper talked Mr. Moore into using regular doors, but in so doing, Mr. Cooper improperly sized those doors so that once you are in the bathroom, you have to close the bathroom door in order to open the closet door. This could have been remedied by either moving the doors or changing the door sizes.

(aa)   Interior doors were supposed to be 6 panel solid wood doors, but they are not.

16



(bb)    Mr. Moore had asked for and paid for dye to be added to the concrete floor in the

garage, but apparently either no such dye was added, or the color was improperly added

because it is not in any way apparent that there is any color in the concrete.

37.    The Defendant had a duty to maintain accurate records of all costs and expenses, not

only to satisfy his obligations to the Plaintiffs, but to satisfy other requirements, such as federal tax

laws.

## Count I – Breach of Contract

38.    The Plaintiffs incorporate by reference their factual allegations contained in

numerical paragraphs 1 through 37 above into this Count I of their Complaint and do further allege

as follows:

39.    All Contracts in Tennessee have a duty of good faith and fair dealing, the Defendant

has breached this duty.

40.    In any cost-plus contract there is an implicit understanding between the parties that

the costs must be reasonable and proper, and the Contractor is under a duty of itemizing each and

every expenditure made by him on the job and where the owner denies being indebted to the

contractor the latter has the burden of proving each and every item of expense in connection with

the job. *Forrest Construction Company, LLC v. Laughlin, 337 S.W. 3rd 211 (2009).*

41.    The Moores repeatedly asked the Defendant for documentation to account for

Cooper's actual cost of construction, but were not only not provided complete information, in many

significant instances they were given fraudulent information with charges that were either greatly

inflated from the actual charge or completely fabricated.

17



42.    The actions of the Defendant constitute a breach of contract and render the Defendants liable to the Plaintiffs for compensatory damages, as the Defendant did not seek competitive bids and he, not only refused to support his underlying costs and expenses with reliable data (likely because there was none), but also provided false, fraudulent and fictitious information to the Plaintiffs with many of his periodic billings or invoices.

43.    As a direct and proximate result of the Defendant's conduct, the Plaintiffs have suffered damages, and will suffer further irreparable harm unless the Defendant, Cooper and or his construction company is made to compensate the Plaintiffs.

**Count II - Fraud**

44.    The Plaintiffs incorporate by reference their factual allegations contained in numerical paragraphs 1 through 37 and paragraphs 39,40 and 41 from above as well as paragraph 47 from below into this Count II of their Complaint and do further allege as follows:

45.    The Defendant's conduct, as set forth above, constituted such intentional misrepresentation of material facts and was designed to mislead the Plaintiffs and defraud them of their money and resulted in such financial injury to the Plaintiffs that they should recover a monetary sum from the Defendant, not only for the Plaintiffs financial loss in overpayments and outright fraudulent charges, but also punitive damages to discourage any such future conduct.

**Count III - Conversion**

46.    The Plaintiffs incorporate by reference the factual allegations contained in numerical paragraphs 1 through 37 and paragraphs 39, 40 and 41 above into this Count III of their complaint and do further allege as follows:

18




47.     The Defendant submitted fraudulent invoices for labor, materials, appliances and equipment hire to the Plaintiffs which they paid because the Plaintiffs, at that time, were unaware of their fraudulent character. Additionally, by his trickery and deception, the Defendant extracted payments from the Plaintiffs for materials that were either not needed for the construction of their home and/or that were kept by the defendant for other purposes or other projects now or in the future.  He thereby wrongfully appropriated money from the Plaintiffs or through his larcenous behavior had them pay for property which they never got any benefit of and for fraudulent charges. The Defendant thereby exercised his own unlawful control over the Plaintiffs' money and property through the Defendant's wrongful behavior.

<strong>Count IV- Negligence and Poor Workmanship:</strong>

48.     The Plaintiffs incorporate by reference their factual allegations contained in numerical paragraphs 1 through 37 above into this Count II of their Complaint and do further allege as follows:

49.     The Defendant was negligent and used poor workmanship in the installation of the roof, supply lines, quality and installation of doors and other aspects of this project which will have to be remedied and/or devalue the Plaintiffs' home.  In either case this results in compensable damages to the Plaintiffs. Some aspects of the poor or defective workmanship was not apparent upon the Defendant's abandonment of the jobsite and discontinuation of work, and some was not discovered until after this lawsuit was filed.  There are both latent and patent defects in the quality and nature of his materials and workmanship.

19

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for the following:

1.      A judgment against the Defendant, Mark Cooper, d/b/a Cooper Construction, for all sums paid in excess of the contractual agreement and for all sums the Plaintiffs expended, that could have been avoided, had the Defendant not breached the contractual agreement.

2.      The Defendant be compelled to produce documentation of all of his expenses related to the contract with the Plaintiffs, including all efforts made for competitive bidding and pricing.

3.      Any unjust enrichment, unjust profits, paid to the Defendant as a consequence of his wrongful, deceitful, unlawful or tortuous conduct be disgorged from him and returned to the Plaintiffs.

4.      They have a judgment against the defendant for all money or property tortuously or fraudulently converted from them by the Defendant or his agents or co-conspirators, and that they be allowed to amend their complaint to add any such additional tortfeasors or wrongdoers as new evidence surfaces directly linking any such persons or entities.

5.      They be awarded punitive damages against the Defendant in the amount of Three Hundred and Fifty Thousand Dollars ($350,000.00).

6.      They have such other, further, and general relief, and other damages and/or relief deemed appropriate by the Court.

7.      A jury to try the issues.

20

Respectfully submitted,

John M. Miles, BPR# 013345
Attorney for Plaintiffs
511 South Third Street
P.O. Box 8
Union City, TN 38281
(731) 885-1234

## Certificate of Service

I hereby certify that I have served a copy of the foregoing upon the Honorable Steve Conley, Attorney for Defendant, P.O. Box 427, Union City, TN 38281, via U.S. Mail, postage prepaid, this the __2.3__ day of ___July___, 2021.

John M. Miles

21

# EXHIBIT 3

# MOTION TO WITHDRAW

FILED April 30, 2025
TIME 3:40pm
EMILY HALL, CLERK & MASTER
eh D.C.&M.
Ex. 3

## IN THE CIRCUIT COURT OF OBION COUNTY, TENNESSEE
## AT UNION CITY

**CHARLES MOORE and BETTYE MOORE,**

     **Plaintiffs,**

                             **No.: CC-20-CV-25**

**vs.**

                             **JURY DEMAND (12)**

**MARK COOPER d/b/a COOPER CONSTRUCTION,**

     **Defendant.**

### MOTION TO WITHDRAW

Comes now the law firm of McAngus Goudelock & Courie, LLC as well as Attorneys Paul Brewer and Olivia Park, pursuant to LOCAL RULE 3, and hereby move this Court to allow them to withdraw as counsel for Defendant Mark Cooper d/b/a Cooper Construction in this matter. As grounds for this Motion, McAngus Goudelock and Courie, LLC, Paul Brewer, and Olivia Park state as follows:

1.     McAngus Goudelock and Courie, LLC, Paul Brewer, and Olivia Park were retained by Builders Mutual Insurance Company to represent Defendant Mark Cooper d/b/a Cooper Construction.

2.     Recently, said insurance company advised McAngus Goudelock and Courie, LLC, Paul Brewer, and Olivia Park that the authorization for payment of legal services to McAngus Goudelock and Courie, Paul Brewer, and Olivia Park for Defendant Mark Cooper d/b/a Cooper Construction has been terminated.

3.     Defendant Mark Cooper d/b/a Cooper Construction has been advised of the same.

4.    Defendant Mark Cooper d/b/a Cooper Construction is still represented by attorney Steve Conley of The Conley Firm in this matter.  Accordingly, Defendant Mark Cooper d/b/a Cooper Construction will not suffer any prejudice or harm by allowing McAngus Goudelock and Courie, LLC, Paul Brewer, and Olivia Park to withdraw as counsel.

**WHEREFORE**, McAngus Goudelock and Courie, LLC, Paul Brewer, and Olivia Park hereby move the Court to allow them to withdraw as counsel for Defendant Mark Cooper d/b/a Cooper Construction in this matter.

This the _____ day of January, 2025.

Respectfully submitted,

MCANGUS GOUDELOCK & COURIE, LLC

_____
J. PAUL BREWER, 025289
OLIVIA PARK, 037006
Post Office Box 2949
120 Brentwood Commons Way, Suite 625
(37027)
Brentwood, Tennessee 37024
Phone: (615) 499-7279
Facsimile: (615) 523-1496
Email: paul.brewer@mgclaw.com
Email: olivia.park@mgclaw.com

ATTORNEYS FOR MARK COOPER D/B/A
COOPER CONSTRUCTION

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon all counsel of record by electronic mail pursuant to Tennessee Rule of Civil Procedure 5.02 and by depositing a copy of the same in an official depository of the U.S. Mail in a postage-paid envelope to non-attorneys addressed as follows:

> Frank Holbrook
> 511 S. Third Street
> P.O. Box 8
> Union City, Tennessee 38281
> Email: FHolbrook.law@protonmail.com
> *Attorney for Plaintiffs*

> John M. Miles
> 511 South Third Street
> P.O. Box 8
> Union City, Tennessee 38281
> Email: mileslaw@johnmiles.com
> *Attorney for Plaintiffs*

> Steve Conley
> Conley & Conley
> 317 South Third Street
> P.O. Box 427
> Union City, Tennessee 38281
> Email: steve@theconleyfirm.com
> *Attorney for Mark Cooper d/b/a Cooper Construction*

> Mark Cooper
> 927 East County Home Road
> Union City, Tennessee 38261

This the _____ day of January, 2025.

_____
J. PAUL BREWER

# EXHIBIT 4

# ORDER TO WITHDRAW

FILED April 30, 2025
TIME 3:40 pm
EMILY HALL, CLERK & MASTER
eh D.C.&M.

Ex. 4

Brewer, and Olivia Park have grounds to withdraw pursuant to RCP 1.16(a)(1). As such, the Motion to Withdraw is well taken and is hereby **GRANTED**. Therefore, it is:

**ORDERED, ADJUDGED, and DECREED** that McAngus Goudelock and Courie, LLC, Paul Brewer, and Olivia Park are hereby withdrawn and removed as counsel of record for Defendant Mark Cooper d/b/a Cooper Construction effective immediately. It is further:

**ORDERED, ADJUDGED, and DECREED** that Attorney Steve Conley and The Conley Firm will remain as counsel of record for Defendant Mark Cooper d/b/a Cooper Construction. It is further:

**ORDERED, ADJUDGED, and DECREED** that McAngus Goudelock and Courie, LLC, Paul Brewer, and Olivia Park are hereby relieved of any and all further responsibilities in this case.

ENTERED this the _25_ day of _February_ , 2025.

_____
**JEFF PARHAM, CIRCUIT JUDGE**

APPROVED FOR ENTRY:


**MCANGUS GOUDELOCK & COURIE, LLC**


J. PAUL BREWER, 025289
OLIVIA PARK, 037006
Post Office Box 2949
120 Brentwood Commons Way, Suite 625 (37027)
Brentwood, Tennessee 37024
Phone: (615) 499-7279
Facsimile: (615) 523-1496
Email: paul.brewer@mgclaw.com
Email: olivia.park@mgclaw.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon all counsel of record by electronic mail pursuant to Tennessee Rule of Civil Procedure 5.02 and by depositing a copy of the same in an official depository of the U.S. Mail in a postage-paid envelope to non-attorneys addressed as follows:

> Frank Holbrook
> 511 S. Third Street
> P.O. Box 8
> Union City, Tennessee 38281
> Email: FHolbrook.law@protonmail.com
> *Attorney for Plaintiffs*
>
> John M. Miles
> 511 South Third Street
> P.O. Box 8
> Union City, Tennessee 38281
> Email: mileslaw@johnmiles.com
> *Attorney for Plaintiffs*
>
> Steve Conley
> Conley & Conley
> 317 South Third Street
> P.O. Box 427
> Union City, Tennessee 38281
> Email: steve@theconleyfirm.com
> *Attorney for Defendant Mark Cooper d/b/a Cooper Construction*
>
> Mark Cooper
> 927 East County Home Road
> Union City, Tennessee 38261

This the 14th day of February, 2025.

J. PAUL BREWER

Page **4** of **4**